THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. JULIO AYALA RUIZ, Defendant and Appellant.

No. CR-65-367. Decided June 30, 1966.

*César Andréu Ribas* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Nilita Vientós Gastón, Assistant Solicitor General,* for The People.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

In *People* v. *Seda,* 82 P.R.R. 695 (1961), we stated that the undercover agent is an investigation weapon necessary for the efficient persecution of certain offenses which, because of their essential clandestine characteristic, would otherwise remain unpunished. We warned, however, that even when ordinarily the sole testimony of the agent regarding a sales transaction—in that case the sale of *bolita* numbers —was sufficient to sustain a conviction, the trial courts had to be very cautious in the weighing of the evidence, especially in the cases in which any other evidence, either documentary or otherwise, was omitted.

Since then we have reviewed several convictions for violations of the *Bolita* Act in which the only testimony introduced to establish the offense is that of the undercover agent. It seems that our position in *Seda* has been construed as a frank and open license to judge these cases on the basis of the stereotyped version, which in identical terms describes

the commission of the offense.[1] If to this fact we add the long period of time which elapses between the transaction, the sworn statement made by the agent for the purpose of determining probable cause and the filing of the corresponding information, it is easy to understand that the defendants are placed in a difficult situation. This situation, as frequent as the number of cases reviewed, causes great dissatisfaction in our conscience, and evokes the existence of founded doubts, not so much of the effectiveness of the method of investigation—although indispensable, should be used in a manner compatible with the most elementary rules of justice—but in its daily implementation.

■ We do not attempt to define accurately the particulars that should be covered by the undercover agent's testimony. We are aware of the fact that in our mission of setting rules in the administration of criminal justice the gamut of situations is too ample to require fixed and invariable standards. We shall only attempt to establish certain minimum guides to guarantee the integrity of the proceedings and dispel any doubt, most probably unfounded, that in our environment the prosecution of certain persons who are linked with crime by reputation is sanctioned.

On Sunday, September 16, 1962, about 9:30 A.M. an undercover agent watched appellant from a distance of from 5 to 10 feet while the latter talked to other persons at a service station located at the entrance of Santiago Iglesias' Development. He states in a single testimony: "I was able to see that he asked them what number they wanted to play and they told him the number; I came closer and then he asked me: 'Are you going to play also?' and to this I an-

---

[1] In *People* v. *Luciano*, 83 P.R.R. 551 (1961), we already expressed concern regarding the contents of affidavits supporting the issuance of search warrants. Pointing out the situation Justice Serrano expressed in an unforgettable statement: "We judges should not, after all, be so naive as to believe statements which no one else would believe." (P. 561.)

swered yes. I gave him a dollar and asked him to play number 912 for me; he told me the drawing would be made by the last three figures of the winning ticket in the Puerto Rican lottery; then he took the dollar and wrote down the numbers in a black Composition book which had 3-digit numbers followed by a dash and other figures to the right. After he made the transactions he boarded a car with license plate number 706-296 and left." On cross-examination he alleged he did not remember the day of the week when the transaction took place; he admitted he knew one of the persons talking to the defendant, but not the other two whom he did not ask for their names "because that arouses suspicions"; that he arrived at the service station with his friend Juan Vélez Méndez; but that the latter did not see the transaction; that he did not know appellant prior to the occurrence; that he does not keep a daily record with which his whereabouts on a particular day can be checked; that he makes entries in a notebook which he later enters in a violations report which he delivers to his immediate supervisor; that he received no ticket whatsoever as proof of his wager.

The defense tried to establish an alibi placing appellant on the date and time indicated in the clubhouse for the employees of El Comandante Race Track, which place he used to visit on racing days. To that effect the testimony of the racetrack's cashier and of the defendant himself were introduced.

In spite of the fact that these incidents took place on September 12, 1962 it was not until the following March 22, more than six months later, that the undercover agent testifies before a judge for the determination of probable cause. What justification is there for this delay? None is offered. There is no doubt that if the testimony had been taken immediately the guarantee of the veracity of the agent's statement would have been greater and more reliable. It cannot

be adduced that with that the effectiveness of the confidential investigation being carried on is jeopardized because in no way it reveals the identity of the undercover agent before the possible violators of the law in the area in which the investigation is taking place. We insist, why this delay? Is it not preferable that the testimony be produced when the facts are fresh in the mind; without having to depend almost exclusively on a series of notes which are not introduced afterwards?

Examining the contents of the testimony given by the agent it can be immediately observed that is reduced to the minimum particulars necessary to establish the violation. Precisely because of the position in which the defendant is placed it is necessary to surround these particulars with certain details in order to place the trier in a position to give said testimony the optimum degree of credibility. When the agent takes the witness stand there is no danger of jeopardizing the investigation he was commissioned to conduct. It is not improper to reveal the period during which the investigation took place, the area covered, the results obtained by indicating the causes of actions obtained against other violators caught in the raid, and other pertinent details. Furthermore, in the stereotyped version so frequently produced, the agent usually remarks that the offender is carrying on transactions with other persons whose identity is usually unknown. No great sharpness is required to obtain information on the names of these persons without risking discovery. Likewise, which is the reason for destroying the notes taken by the agent at the end of each transaction? All these gaps in the presentation of the agent's testimony must be covered.

The situation described shows that the possibility of including innocent people in their zest to eradicate the social evil brought about by the illegal game of *bolita* is not remote.

The method of investigation must be improved to prevent the people from losing faith in justice. It is up to the authorities to make the necessary adjustments.

 Returning to the facts in the case at bar, it all boils down to a conflict of evidence. It is the slim and bare testimony of the agent against that of the defendant, also vague and inaccurate. In the face of this alternative, in the absence of a more explicit testimony of the agent, and considering the additional fact already mentioned that a long period elapsed between the alleged commission of the violation and the delivery of the sworn statement for the purpose of determining probable cause, we grant appellant the benefit of a reasonable doubt.

The judgment entered by the Superior Court, San Juan Part, on October 1, 1963 shall be reversed and appellant's acquittal shall be ordered.

Mr. Justice Santana Becerra did not participate herein.